## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

IN RE: DENVER M. HALL                      Case No. 3:20-bk-12265J
                                                                                                    (Chapter 7)
                 **Debtor.**

**DENVER M. HALL**                                                                      **PLAINTIFF**

vs.                            AP No. 3:23-ap-01051

**GREENWAY EQUIPMENT, INC.**                                    **DEFENDANT**

### MEMORANDUM OPINION

Denver M. Hall (the "**Debtor**") filed a *Complaint for Declaratory Judgment and Damages for Violation of Discharge Injunction* (AP Doc. No. 1) (the "**Complaint**") against Greenway Equipment, Inc. ("**Greenway**") seeking a determination that a debt he owed to Greenway was not a student loan excepted from discharge under Section 523(a)(8) of the Bankruptcy Code but was instead a debt discharged in his bankruptcy case. Greenway filed a timely answer to the Complaint pleading affirmatively that the debt owed to it by the Debtor was not discharged in the Debtor's bankruptcy case pursuant to exceptions found in Section 523(a)(8).

A trial on the merits was held on August 14, 2024, in Jonesboro, Arkansas. Frank H. Falkner of the Dilks Law Firm appeared on behalf of the Plaintiff, who also appeared in person and testified on his own behalf. Timothy Meitzen of Pettie & Meitzen, PLLC, appeared on behalf of Greenway. Tommy Joe Hall and Abigail Powell appeared and testified on behalf of Greenway.

## I. Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). The parties have expressly consented to this Court entering a final order on all claims and causes of action asserted in this adversary proceeding. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## II. Facts

Greenway is an Arkansas corporation that owns and operates John Deere dealerships in multiple locations, including locations in Augusta and Des Arc, Arkansas. The Debtor began working for John Deere in Augusta, Arkansas, when he was sixteen years old. A few years later, on or about August 19, 2016, the Debtor and Greenway entered into a *John Deere Ag-Tech Program Tuition Assistance Agreement* (the "**Ag-Tech Agreement**") by which Greenway agreed to pay certain costs for the Debtor to participate in the *John Deere Ag-Tech College Program* (the "**Program**") at Arkansas State University-Beebe ("**ASU-Beebe**"). Specifically, Greenway agreed to pay for the Debtor's tuition, lab fees, summer internship, books, resident halls, and meals (collectively the "**Costs**") associated with the Program. In exchange, the Debtor agreed to maintain a "B" grade point average, complete the Program, and work for Greenway as a full-time employee for at least three years following his graduation from the Program. The Ag-Tech Agreement also provided that Greenway would pay the Costs directly to ASU-Beebe.

The Ag-Tech Agreement provided a schedule for the amount the Debtor would be obligated to reimburse Greenway for Costs paid to ASU-Beebe if he voluntarily quit or was fired for cause within three years of graduation. The amount to be reimbursed was based on his length of employment as follows: 100% reimbursement if he quit or was terminated within one year of graduation; 60% if within two years of graduation; and 30% if within three years of graduation.

2

The Debtor began classes at ASU-Beebe in the Fall of 2016 and completed the Program in the Spring of 2018 earning an Advanced Agricultural Farming Technology degree.  Greenway paid funds directly to ASU-Beebe for all the Costs associated with the Program.  According to Tommy Joe Hall, who has worked at Greenway for twenty-five years and is familiar with the Program, students in the Program learn all aspects of John Deere equipment while also taking general education courses to earn an associate degree upon completion of the Program.

After completing the Program, the Debtor started working full-time for Greenway at the Des Arc location and shortly thereafter, on March 4, 2019, his employment with Greenway was terminated.  The Employee Termination Report introduced into evidence indicated that the Debtor was dismissed "for cause" for "absenteeism/tardiness."  (Pl's. Ex. 10).  He admitted he "was late pretty habitually."  (Tr. at 35).  In fact, he stated that during the five years he worked at Greenway he was late approximately every other day.

On March 8, 2019, the Debtor signed a document stating he "defaulted" on the Ag-Tech Agreement and agreed to pay $19,652.00 to Greenway "to repay the sponsorship."  (Pl's. Ex. 7).  No payments were ever made to Greenway.  Although the Debtor completed the two-year Program, he testified that he has not been able to find employment with John Deere dealerships or other big equipment implement companies using the skills he learned at ASU-Beebe.  The Debtor testified that his completion of the Program has not helped him secure employment following his termination with Greenway, stating that it "hasn't helped [him] a bit."  (Tr. at 52).

The Debtor filed his chapter 7 bankruptcy petition on May 14, 2020, at a time when he was unemployed and could not afford to pay for his vehicle and other debts.  He listed a debt owed to Greenway in the amount of $21,119.99, as a general unsecured debt.  His discharge was entered on August 13, 2020.

On February 17, 2023, Greenway filed a lawsuit against the Debtor in the district court of Pulaski County, Arkansas, seeking a judgment against the Debtor in the amount of $21,283.10, plus interest and attorney fees for breach of contract and unjust enrichment. The Debtor reopened his bankruptcy case and filed this Complaint seeking a determination that the debt he owed to Greenway was discharged in his bankruptcy case.

### III. Arguments

Greenway primarily argues that, under Section 523(a)(8)(A)(ii), the debt owed to it pursuant to the Ag-Tech Agreement is for an obligation to repay funds received as an educational benefit, which cannot be discharged absent a showing of undue hardship. Under this statute, the Debtor makes several arguments. First, that he did not "receive" funds from Greenway, as the money was paid by Greenway directly to ASU-Beebe. Second, he did not receive an "educational benefit" from the Program. Finally, the Debtor argues that reading Section 523(a)(8)(A)(ii) broadly to include the debt associated with the Ag-Tech Agreement would make Section 523(a)(8)(A)(i) and Section 523(a)(8)(B) superfluous.

Alternatively, Greenway argues the Ag-Tech Agreement is a qualified education loan excepted from discharge under Section 523(a)(8)(B).[1] The Debtor disagrees, arguing the funds were not used solely for qualified educational expenses.

### IV. Discussion

The treatment of student loans in bankruptcy proceedings has undergone several changes since 1976 when Congress first enacted limitations on the dischargeability of student loans. The current version of Section 523(a)(8)(A)(ii) provides, in relevant part, that a "discharge under section 727 . . . does not discharge an individual debtor from any debt . . . for . . . an obligation to

---

[1] At trial, the parties agreed that Section 523(a)(8)(A)(i) was inapplicable because the debt under the Ag-Tech Agreement was not made, insured, or guaranteed by a governmental unit or a nonprofit institution.

4

repay funds received as an educational benefit, scholarship, or stipend." 11 U.S.C. § 523(a)(8)(A)(ii). A discussion of the history of Section 523(a)(8) is helpful for an understanding of the statute at issue.

### A. History of Section 523(a)(8)

Section 523(a)(8) originally provided:

> A discharge under section 727 . . . does not discharge an individual debtor from any debt:
>
> . . . .
>
> (8) to a governmental unit, or a nonprofit institution of higher education, for an educational loan, unless—(A) such loan first became due before five years before the date of the filing of the petition; or
>
> (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

*Essangui v. SLF V-2015 Tr. (In re Essangui)*, 573 B.R. 614, 618 (Bankr. D. Md. 2017) (quoting Pub. L. No. 95-598, 92 Stat. 2549 (1978)). In 1979 and 1984, "Congress then clarified the scope of section 523(a)(8) . . . adding language to cover educational loans" and "eliminating the reference to 'higher education.'" *Id.* (first citing Pub. L. No. 96-56, 93 Stat. 387 (1979); and then citing Pub. L. No. 98-353, 98 Stat. 333 (1984)). The language of the statute then read:

> A discharge under section 727 . . . does not discharge an individual debtor from any debt:
>
> . . . .
>
> (8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a non-profit institution, unless—
>
> (A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or
>
> (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

5

*Id*. (quoting 11 U.S.C. § 523(a)(8) (1986 ed.)).

Using this version of Section 523(a)(8), the Eighth Circuit Court of Appeals, analyzing facts similar yet distinguishable from the facts in the instant case, had to determine whether a "financial obligation incurred under the Physician Shortage Area Scholarship Program ("PSASP") . . . was a debt 'for an educational loan'" for purposes of Section 523(a)(8). *U.S. Dep't of Health & Hum. Servs. v. Smith*, 807 F.2d 122, 122 (8th Cir. 1986). Both the lower courts had held that the PSASP debt was not a loan; the Eighth Circuit reversed the lower courts' decisions and held the debt to be a loan. *Id.*

The *Smith* case involved Dr. Robert Smith, a physician, who was awarded approximately $14,000.00 in scholarship grants under the PSASP "to finance his medical training." *Id*. at 123. Under the program guidelines, in exchange for the scholarship Dr. Smith agreed to practice medicine in an area with a physician shortage—agreeing to practice in an underserved area one year for each year he received scholarship grants. If he failed to comply with the condition of practicing medicine in an area with physician shortages, the United States would be allowed to recover the amount of the grant, plus interest. Dr. Smith failed to comply with the condition and the United States began to pursue repayment of the monetary funds he received, plus interest as provided for by the agreement under the PSASP. Dr. Smith filed bankruptcy and the United States filed an adversary proceeding to determine whether the debt was dischargeable.

In the *Smith* case, the Eighth Circuit was interpreting the first exception of Section 523(a)(8)—whether the debt was for "an educational loan made . . . by a governmental unit." *Id*. (quoting 11 U.S.C § 523(a)(8) (1986 ed.)). The Eighth Circuit found the "weight of authority [was] that '[a] loan is no less a loan because its repayment is made contingent.'" *Id*. at 125 (second alteration in original) (quoting *United Gas Improvement Co. v. Comm'r of Internal*

6

*Revenue*, 240 F.2d 312, 318 (3d Cir. 1956)). The Eighth Circuit concluded that the terms of Dr. Smith's "PSASP scholarship constituted a 'loan,' since he agreed to reimburse the United States if he failed to practice in a physician shortage area." *Id.* at 127. In making its conclusion, the Eighth Circuit relied on the statute's legislative history, stating it "shows beyond doubt that Congress intended § 523(a)(8) . . . to make nondischargeable those debts incurred under programs such as PSASP." *Id.*

As noted by the *Essangui* court, "the conditional scholarship at issue [in the *Smith* case] was granted under a federal program . . . that provided financial assistance to medical students who agreed to serve certain underserved geographical areas after graduation. It thus was akin to the federal student loan program that initially triggered action by Congress in 1976 under the Higher Education Act of 1965." *In re Essangui*, 573 B.R. at 618–19. The Eighth Circuit's "broad interpretation of the term 'loan' in the context of section 523(a)(8)" was not agreed to by all courts. *Id.* at 619 (first citing *Boston Univ. v. Mehta (In re Mehta)*, 262 B.R. 35 (D.N.J. 2001), *aff'd* 310 F.3d 308 (3d Cir. 2002); then citing *Ray v. Univ. of Tulsa (In re Ray)*, 262 B.R. 544 (Bankr. N.D. Okla. 2001); and then citing *Cmty. Mem'l Hosp. v. Gordon (In re Gordon)*, 231 B.R. 459 (Bankr. D. Conn. 1999)).

This led to the 1990 amendments to Section 523(a)(8). *Id.* (first citing *Dufrane v. Navient Sols., Inc. (In re Dufrane)*, 566 B.R. 28, 35–39 (Bankr. C.D. Cal. 2017); and then citing *Campbell v. Citibank, N.A. (In re Campbell)*, 547 B.R. 49, 55–57 (Bankr. E.D.N.Y. 2016)). As one court explained, "Congress amended § 523(a)(8) largely in response to *U.S. Health & Human Servs. v. Smith*, 807 F.2d 122 (8th Cir. 1986)." *In re Dufrane*, 566 B.R. at 37. The new language added an exclusion from discharge "for an obligation to repay funds received as an

7

educational benefit, scholarship or stipend." *In re Essangui*, 573 B.R. at 619 (quoting 11 U.S.C. § 523(a)(8) (1990 ed.)).

Additional amendments were made between 1990 and 2005, including the latest revisions made by the BAPCPA amendment resulting in the current language and structure of Section 523(a)(8), which now reads:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>
> . . . .
>
>> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—
>>
>>> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>>>
>>> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>>>
>>> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.

11 U.S.C. § 523(a)(8).

Greenway argues that the Debtor's obligation is nondischargeable under this current version of Section 523(a)(8)(A)(ii). For the reasons stated in the analysis below, the Court agrees.

### B. Analysis of Statutory Language of Section 523(a)(8)(A)(ii)

A determination of the issues raised by the parties requires the Court to construe the statutory language of Section 523(a)(8)(A)(ii). This section provides that "a discharge under section 727" does not discharge a debt for "an obligation to repay funds received as an educational benefit, scholarship, or stipend." 11 U.S.C. § 523(a)(8)(A)(ii). The analysis begins

8

with the language of the statute itself. *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004).

### *(1) "Obligation to Repay"*

First is the requirement that there be "an obligation to repay." Unlike the *Smith* case, the issue before this Court is whether the Debtor had an obligation to repay funds, not whether the obligation could be characterized as an educational loan.

The parties do not dispute that the Debtor is obligated to repay the funds advanced under the Ag-Tech Agreement. The Ag-Tech Agreement clearly provided that the Debtor would be obligated to repay the funds if he voluntarily quit or was fired "for cause" before the completion of the terms of the agreement. The evidence was that the Debtor was terminated from his employment with Greenway prior to the first anniversary of his graduation from the Program. According to the Ag-Tech Agreement, the Debtor was obligated to repay 100% of the Costs paid to ASU-Beebe by Greenway. The Debtor acknowledged owing the debt in a written, signed acknowledgement introduced into evidence by the Debtor. In addition, the Debtor listed the debt on his bankruptcy schedules as an unsecured debt, without noting the debt was disputed.

Based on these facts, the Court finds that the Debtor had an obligation to repay funds to Greenway under the Ag-Tech Agreement.

### *(2) "Funds Received"*

Next is the language "funds received." The Debtor argues that he did not receive any funds from Greenway but that the funds were "received" by ASU-Beebe. Whether funds must be received directly by a debtor for the provisions of Section 523(a)(8)(A)(ii) to be met was addressed by the Bankruptcy Appellate Panel for the Ninth Circuit in the case of *Kashikar v. Turnstile Capital Management, LLC (In re Kashikar)*, 567 B.R. 160 (B.A.P. 9th Cir. 2017). In

9

*Kashikar*, the debtor argued that "because the loan proceeds were disbursed directly to SMU and not to her, her student loan [was] not included in § 523(a)(8)(A)(ii)." *Id.* at 165. The argument was rejected by the Ninth Circuit B.A.P. *Id.* at 166; *see also Rizor v. Acapita Educ. Fin. Corp. (In re Rizor)*, 553 B.R. 144, 150 (Bankr. D. Alaska 2016) ("Money paid to the education institution for a debtor's educational benefit which the debtor is required to repay to the lender also qualifies" as funds received under Section 523(a)(8)(A)(ii) (emphasis omitted)).

In addition, the Debtor's interpretation of the use of the word "received" in the statute is not supported by the language of the statute itself. In the context of the statutory provision, the word "as" precedes "educational benefit." The natural reading of the words taken together is that the debtor *received* an educational benefit (or scholarship or stipend), not the funds. *See Crocker v. Navient Sols., LLC (In re Crocker)*, 941 F.3d 206, 221 (5th Cir. 2019) ("The phrase '*as* an educational benefit' indicates that the funds themselves are the educational benefit (like tuition payments) . . . .").

It is not uncommon for educational aids such as scholarships and stipends to be paid directly to an educational institution rather than the person benefiting from the grant. If Congress had wanted only those funds received directly by a debtor to be nondischargeable, it could have so stated. It did not. The plain language of the statute supports the conclusion that it is the payment of the funds as an educational benefit, scholarship, or stipend that brings a debtor's obligation to repay the funds into the scope of Section 523(a)(8)(A)(ii), regardless of whether the funds were paid directly to the debtor or to the educational institution.

For these reasons, the Court finds the funds received by ASU-Beebe under the Ag-Tech Agreement meet the statutory requirement of "funds received" for purposes of determining the nondischargeability of the Debtor's debt owed to Greenway under Section 523(a)(8)(A)(ii).

### *(3) "As An Educational Benefit"*

The final language is "as an educational benefit." "Educational benefit" is not defined by the Bankruptcy Code. In analyzing this statutory language, it is helpful to consider the placement of the term in Section 523(a)(8)(A)(ii). The statute applies to funds received "as an educational benefit, scholarship, or stipend." This Court adopts the analysis of other courts applying *noscitur a sociis,* "the canon that 'counsels that a word is given more precise content by the neighboring words with which it is associated.'" *Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595, 604 (2d Cir. 2021) (quoting *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 634–35 (2012)); *see also McDaniel v. Navient Sols., LLC (In re McDaniel)*, 973 F.3d 1083, 1097 (10th Cir. 2020). The statute groups the words "educational benefit," "scholarship," and "stipend" together. Both a scholarship and a stipend are a type of grant payment "not generally required to be repaid by the recipient." *Homaidan*, 3 F.4th at 604 (quoting *In re Campbell*, 547 B.R. at 55). The grouping supports a conclusion that the term "educational benefit" refers to "conditional grant payments similar to scholarships and stipends." *Id.* at 605.

In the case before the Court, the funds advanced to pay the Debtor's tuition, lab fees, summer internship, books, resident halls, and meals were not intended as an unconditional loan to be repaid, but were in the nature of grants similar to a scholarship or stipend meant to enable the Debtor to attend ASU-Beebe to pursue the two-year Program to learn how to repair and maintain John Deere equipment and implements. The Ag-Tech Agreement, in fact, provides that once the Debtor completed the terms of the agreement, the Debtor would "have no obligation to repay [Greenway] for any [of the Costs] paid." (Pl's. Ex. 6, at 1). The funds advanced would continue to be a grant so long as the Debtor met the conditions of the Ag-Tech Agreement. If the

11

conditions were not met, the Ag-Tech Agreement then required the Debtor to repay Greenway for funds expended.

To the extent the Debtor argues the term "educational benefit" is limited to items such as tuition and books and does not include other items such meals and housing, there is no restriction in the language of Section 523(a)(8)(A)(ii) that only certain components of an educational benefit are to be nondischargeable and others not. Congress could have limited the statute to apply to only funds expended for certain educational expenses, such as tuition and books, but it did not do so.

In addition, as to the Debtor's argument that he received no educational benefit under the Ag-Tech Agreement because his completion of the Program has not helped him secure employment following his termination with Greenway, the Court finds this argument misplaced. The focus of the Court's analysis when considering the phrase "educational benefit" in the context of Section 523(a)(8)(A)(ii) is not on the Debtor's advancement following receipt of the funds, but rather on the purpose of the funds. *See Benson v. Corbin (In re Corbin)*, 506 B.R. 287, 296 (Bankr. W.D. Wash. 2014) ("[A] majority of courts have held that a loan qualifies as an 'educational benefit' if the stated purpose for the loan is to fund educational expenses." (citing *Maas v. Northstar Educ. Fin., Inc. (In re Maas)*, 497 B.R. 863, 869–70 (Bankr. W.D. Mich. 2013), *aff'd sub nom. Maas v. Northstar Educ. Fin., Inc.*, 514 B.R. 866 (W.D. Mich. 2014))).

For all these reasons, the Court finds the funds received under the Ag-Tech Agreement were for an educational benefit as contemplated by the language of Section 523(a)(8)(A)(ii).

The plain language of Section 523(a)(8)(A)(ii) therefore supports a finding that the debt owed to Greenway pursuant to the Ag-Tech Agreement is nondischargeable absent a showing of undue hardship.

### C. Court's Application of Section 523(a)(8)(A)(ii) does not make Section 523(a)(8)(A)(i) and Section 523(a)(8)(B) Superfluous

Finally, the Court will address the Debtor's argument that finding the debt created by the Ag-Tech Agreement to be nondischargeable pursuant to Section 523(a)(8)(A)(ii) would make Section 523(a)(8)(A)(i) and Section 523(a)(8)(B) superfluous. The Debtor argues that such a reading would subject "anything having to do with education money" to be nondischargeable under Section 523(a)(8)(A)(ii). (Tr. at 92). The Debtor's argument is not persuasive.

Finding the debt incurred under the Ag-Tech Agreement to be nondischargeable pursuant to Section 523(a)(8)(A)(ii) does not subsume Section 523(a)(8)(A)(i) or Section 523(a)(8)(B). As discussed above, Congress has expanded the class of nondischargeable educational loans since the 1970s. When Section 523(a)(8)(A)(ii) was created, it was "set off from § 523(a)(8)(A)(i)" and "must be read as encompassing a broader range of educational benefit obligations." *Sensient Techs. Corp. v. Baiocchi (In re Baiocchi)*, 389 B.R. 828, 831–32 (Bankr. E.D. Wis. 2008). As stated above, because the statute groups the words "educational benefit," "scholarship," and "stipend" together, this provision addresses types of payments that are "not generally required to be repaid by the recipient." *Homaidan*, 3 F.4th at 604 (quoting *In re Campbell*, 547 B.R. at 55).

In this case, this Court, as have others before it, interprets Section 523(a)(8)(A)(ii) to apply to "educational payments that are not initially loans but whose terms will create a reimbursement obligation upon the failure of conditions." *Crocker,* 941 F.3d at 223. The Ag-Tech Agreement fits squarely into this category.

In contrast, Section 523(a)(8)(A)(i) involves "educational benefit overpayment[s] or loan[s] made, insured, or guaranteed by a governmental unit" or "any program funded in whole or in part by a governmental unit or nonprofit institution." 11 U.S.C. § 523(a)(8)(A)(i). Section

13

523(a)(8)(B) addresses "any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code." 11 U.S.C. § 523(a)(8)(B). Both subsections address payments that would generally be required to be repaid by the recipient either as an overpayment or a loan. In addition, Section 523(a)(8)(A)(i) does not apply to for-profit entities such as Greenway.

For all of these reasons, the Court disagrees with the Debtor's argument that applying Section 523(a)(8)(A)(ii) in this case makes Section 523(a)(8)(A)(i) and Section 523(a)(8)(B) superfluous.

### V. Conclusion

Based on the above analysis and discussion, the Court concludes the debt owed to Greenway by the Debtor is a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(8)(A)(ii). The Court declines to address Greenway's alternative argument that the debt is nondischargeable under Section 523(a)(8)(B). The relief sought by the Debtor in the Complaint is denied.

**IT IS SO ORDERED.**

_____
Phyllis M. Jones
United States Bankruptcy Judge
Dated: 12/05/2024